**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE REGISTERED HOLDERS OF CD 2017-CD3 MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-CD3, | Civil Case No. _____ |
| | **VERIFIED** |
| | **FORECLOSURE COMPLAINT** |
| Plaintiff, | |
| - against - | **Mortgaged Premises:** |
| 16 EAST 40 REALTY, LLC, NADER HAKAKIAN, ALBERT MONASEBIAN, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, AND JOHN DOE #1 THROUGH JOHN DOE #50, | 16 East 40th Street New York, New York 10016 Block: 869, Lot: 64 |
| Defendants. | |

Wells Fargo Bank, National Association, as Trustee, on behalf of the Registered Holders of CD 2017-CD3 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-CD3 ("Plaintiff"), acting by and through K-Star Asset Management LLC, a Delaware limited liability company, as special servicer (the "Special Servicer"), as and for its verified complaint against defendants 16 East 40 Realty, LLC, Nader Hakakian, Albert Monasebian, City of New York Environmental Control Board, New York City Department of Finance, New York State Department of Taxation and Finance, and John Doe #1 through John Doe #50 (collectively, "Defendants"), alleges as follows:

## Nature of the Action

1.      This is a straightforward commercial mortgage foreclosure action against a borrower that has defaulted on its loan obligations by failing to make its monthly payments and

withholding rents from Plaintiff. Plaintiff is thus entitled to a judgment of foreclosure, together with the recovery of all monies due and owing to it, including, without limitation, principal, ordinary and default interest, statutory interest, late charges, and all costs and expenses incurred by Plaintiff as a result of the borrower's default.

## The Parties

2.      Plaintiff is a national banking associatiation organized under the laws of the United States of America, with its designated main office located at 420 Montgomery Street, San Francisco, California 94104. Plaintiff is the owner of the note and mortgage sought to be foreclosed herein and is the obligee under the guaranty further described herein.

3.      Upon information and belief, defendant 16 East 40 Realty, LLC ("Borrower"), is a New York limited liability company with its principal place of business in New York, New York. Upon information and belief, Borrower is the owner of: (a) the real property at 16 East 40th Street, New York, New York 10016, the property sought to be foreclosed herein (as more particularly described in the mortgage identified herein and the legal description, which is annexed hereto as Exhibit 1 and incorporated herein by reference, the "Premises"), and (b) the fixtures, improvements, equipment, leases, rents, accounts, agreements, and other personal property associated with the Premises (the "Personal Property" and, with the Premises, the "Property").

4.      Upon information and belief, defendant Nader Hakakian ("Guarantor Hakakian") is a resident of the State of New York, and is a principal of Borrower's managing member. Hakakian has submitted to the personal jurisdiction of the courts of the State of New York in connection with this action pursuant to a December 9, 2016 Guaranty (the "Guaranty") executed

by him as "Guarantor" and delivered by him to Plaintiff's predecessor. Hakakian is named as a defendant by virtue of the Guaranty and is personally liable for any deficiency judgment.

5.      Upon information and belief, defendant Albert Monasebian ("Guarantor Monasebian") (together with Guarantor Hakakian, "Guarantors") is a resident of the State of New York, has an ownership interest in Borrower, and is a principal of Borrower's managing member. Monasebian has submitted to the personal jurisdiction of the courts of the State of New York in connection with this action pursuant to the Guaranty. Monasebian is named as a defendant by virtue of the Guaranty and is personally liable for any deficiency judgment.

6.      Upon information and belief, defendant City of New York Environmental Control Board is a department or division of the City of New York, and has been made a defendant herein by virtue of unpaid liens and/or judgments against the Property, if any, that may be due from Borrower, and which lien, if any, is subordinate to the lien of the mortgage sought to be foreclosed herein.

7.      Upon information and belief, defendant New York City Department of Finance is made a defendant herein by virtue of unpaid business taxes and assessments, if any, that may be due from Borrower, which judgment and/or taxes and/or assessments, if any, may be a lien upon the Property by virtue of the provisions of the Tax Law of the State of New York, and which lien, if any, is subordinate to the lien of the mortgage sought to be foreclosed herein.

8.      Upon information and belief, defendant New York State Department of Taxation and Finance is made a defendant herein by virtue of unpaid business taxes and assessments, if any, that may be due from Borrower, which judgment and/or taxes and/or assessments, if any, may be a lien upon the Property by virtue of the provisions of the Tax Law of the State of New

York, and which lien, if any, is subordinate to the lien of the mortgage sought to be foreclosed herein.

9.      Defendants John Doe #1 through John Doe #50 (fictitious names) are named as defendants herein to represent all other parties who may have some interest in or lien upon the Property, subordinate to the lien of the mortgage sought to be foreclosed herein.

10.     Upon information and belief, each of the above-named Defendants has, or claims to have, or may claim to have, some interest in, or lien upon, the Property or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to the lien of the mortgage sought to be foreclosed herein.

**Jurisdiction and Venue**

11.     The Plaintiff is a citizen of California, and, upon information and belief, no Defendant is a citizen of California. Moreover, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.     Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Property is located in this District, and a substantial part of the events and omissions giving rise to this action occurred in this District.

**The Note, Mortgage, Loan Agreement, And Guaranty**

14.     This action seeks to foreclose a mortgage lien on the Property (the "Mortgage"), which lien secures debts and a promissory note (the "Note") in the total original principal sum of $31,500,000.00, as set forth below:

*Mortgage 1*

15.     On November 21, 2006, Borrower executed and delivered to non-party UBS Real Estate Securities Inc. ("First Lender") a certain Mortgage, Assignment of Leases and Rents and Security Agreement and Consolidation, Modification and Restatement Agreement ("Mortgage 1"). Mortgage 1 secured the payment of indebtedness in the principal sum of $22,500,000 whereunder Borrower mortgaged the Property to First Lender.

16.     Mortgage 1 was duly recorded in the Office of the City Register of the City of New York (the "Register's Office") on December 12, 2006 under City Register File Number ("CRFN") 2006000681198.

17.     Borrower also executed and delivered to First Lender a Consolidated Note in the original principal amount of $22,500,000 ("Note 1").

*First Assignment of Mortgage 1, Assignment of Prior*
*UCC Statement, and Continuations of Prior UCC Statement*

18.     On December 21, 2006, First Lender executed and delivered to non-party LaSalle Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP9, Commercial Mortgage Pass-Through Certificates, Series, 2006-LDP9 ("Second Lender"), an Assignment of Mortgage (the "First Assignment of Mortgage 1"), by which First Lender assigned its right, title, and interest in Mortgage 1, together with the bonds or note or obligations secured by Mortgage 1. The First Assignment of Mortgage 1 was duly recorded in the Register's Office on February 28, 2008 under CRFN 2008000082042.

*Second Lender Acquisitions*

19.     On or about October 1, 2007, non-party Bank of America, N.A., as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP9

Commercial Mortgage Pass-Through Certificates, Series 2006-LDP9 ("Bank of America") acquired Second Lender and its loan portfolio, including the subject Loan ("LaSalle Acquisition"). As a result of the LaSalle Acquisition, Bank of America became a successor-in-interest to Second Lender.

20.     Subsequently, on or about January 4, 2011, non-party U.S. Bank National Association ("U.S. Bank") acquired the securitization trust administration business of Bank of America, including with respect to the subject Loan (the "Bank of America Acquisition"). As a result of the Bank of America Acquisition, U.S. Bank, as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP9 Commercial Mortgage Pass-Through Certificates, Series 2006-LDP9 ("Third Lender"), became a successor-in-interest to Bank of America, the successor-in-interest to Second Lender.

### *Second Assignment of Mortgage 1*

21.     On November 21, 2016, Third Lender executed and delivered to non-party Deutsche Bank AG, New York Branch, a branch of Deutsche Bank AG, a German Bank, authorized by the New York Department of Financial Services ("Fourth Lender") an Assignment of Mortgage (the "Second Assignment of Mortgage 1"), by which Third Lender assigned its right, title, and interest in Mortgage 1, together with the bonds or note or obligations secured by Mortgage 1.

22.     The Second Assignment of Mortgage 1 was duly recorded in the Register's Office on December 23, 2016 under CRFN 2016000455409.

### *Mortgage 2*

23.     On December 9, 2016, Borrower executed and delivered to Fourth Lender a certain Gap Mortgage ("Mortgage 2"). Mortgage 2 secured the payment of indebtedness in the

principal sum of $9,000,000.00 whereunder Borrower further mortgaged the Property to Fourth Lender.

24.     Mortgage 2 was duly recorded in the Register's Office on December 23, 2016 under CRFN 2016000455410.

25.     On December 9, 2016, Borrower also executed and delivered to Fourth Lender a Gap Secured Promissory Note in the original principal amount of $9,000,000.00 ("Note 2").

### *Consolidation of Mortgages 1 and 2 (The Mortgage)*

26.     On December 9, 2016, Borrower and Fourth Lender entered into a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), a copy of which is annexed as **Exhibit 1**, whereby the aggregate principal balance of Mortgage 1 and the principal balance of Mortgage 2 were combined so that Fourth Lender had one consolidated $31,500,000 first mortgage lien on the Property. In addition, Borrower and Fourth Lender entered into a Loan Agreement (the "Loan Agreement"), a copy of which is annexed as **Exhibit 2**, whereby Borrower agreed to be further subjected to the terms and conditions of the Loan Agreement and the other loan documents.

27.     The Mortgage was duly recorded in the Register's Office on December 23, 2016 under CRFN 2016000455411.

28.     On December 9, 2016, Borrower also executed in favor of Fourth Lender: (i) a Consolidated, Amended and Restated Promissory Note (the "Note") in the original principal amount of $31,500,000; (ii) an Assignment of Leases and Rents (the "Assignment of Leases and Rents"); (iii) a UCC Financing Statement (the "UCC Statement"), copies of which are annexed as **Exhibits 3**, **4**, and **5**, respectively, which further secured payment of the $31,500,000 indebtedness.

7

29.     The Assignment of Leases and Rents was duly recorded in the Register's Office on December 23, 2016 under CRFN 2016000455412.

30.     The UCC Statement was duly recorded in the Register's Office on December 23, 2016 under CRFN 2016000455414.

### *First Assignment of Mortgage, ALR, and UCC Statement*

31.     On March 10, 2017, Fourth Lender executed and delivered to non-party German American Capital Corporation ("Fifth Lender"): (i) an Assignment of Mortgage (the "First Assignment of Mortgage"), (ii) an Assignment of Assignment of Leases and Rents (the "First Assignment of ALR"); (iii) an Assignment of UCC Financing Statement (the "First Assignment of UCC Statement"), copies of which are annexed as **Exhibits 6**, **7**, and **8**.

32.     The First Assignment of Mortgage was duly recorded in the Register's Office on April 12, 2017 under CRFN 2017000142767.

33.     The First Assignment of ALR was duly recorded in the Register's Office on April 12, 2017 under CRFN 2017000142768.

34.     The First Assignment of UCC Financing Statement was duly recorded in the Register's Office on April 12, 2017 under CRFN 2017000142769.

### *Second Assignment of Mortgage, ALR, and UCC Statement*

35.     On March 10, 2017, Fifth Lender executed and delivered to Plaintiff: (i) an Assignment of Mortgage (the "Second Assignment of Mortgage"), (ii) an Assignment of Assignment of Leases and Rents (the "Second Assignment of ALR"); (iii) an Assignment of UCC Financing Statement (the "Second Assignment of UCC Statement"), copies of which are annexed as **Exhibits 9**, **10**, and **11**.

36.     The Second Assignment of Mortgage was duly recorded in the Register's Office on April 12, 2017 under CRFN 2017000142770.

37.     The Second Assignment of ALR was duly recorded in the Register's Office on April 12, 2017 under CRFN 2017000142771.

38.     The Second Assignment of UCC Financing Statement was duly recorded in the Register's Office on April 12, 2017 under CRFN 2017000142772.

### *Continuation of UCC Statement*

39.     On July 14, 2021, a Continuation of UCC Financing Statement ("Continuation of UCC Statement") was duly recorded in the Register's Office on July 14, 2021 under CRFN 2021000268386, a copy of which is annexed as **Exhibit 12**, which UCC Financing Statement Amendment continued the effectiveness of the UCC Statement.

### *Plaintiff's Physical Possession of Loan Documents and Standing to Foreclose*

40.     The original Note, Mortgage, and Loan Agreement ("Loan Documents") were physically delivered to Plaintiff and/or Plaintiff's counsel prior to the commencement of this action, and Plaintiff and/or its counsel are still in possession of the original Loan Documents— establishing Plaintiff's standing to foreclose.

### *The Guaranty*

41.     As additional security for certain obligations of Borrower under the Loan Documents, Guarantors, as of December 9, 2016, executed, acknowledged, and delivered the absolute, unconditional, present, and continuing Guaranty of Recourse Obligations, annexed as **Exhibit 13**.

## Pertinent Terms Of The Loan Documents

42.    The Note provides, among other things:

This Note and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and performed in such State (without regard to principles of conflict of laws) and any applicable law of the United States of America. To the fullest extent permitted by law, Borrower hereby unconditionally and irrevocably waives any claim to assert that the law of any other jurisdiction governs this Note and this Note shall be governed by, and construed in accordance with, the laws of the State of New York pursuant to section 5-1401 of the New York General Obligations law.

Any legal suit, action or proceeding against Lender or Borrower arising out of or relating to this Note may at Lender's option be instituted in any Federal or State court in the City of New York, County of New York, pursuant to section 5-1402 of the New York General Obligations law, and Borrower waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Borrower hereby irrevocably submits to the exclusive jurisdiction of any such court in any suit, action or proceeding. Borrower agrees that service of process upon Borrower at the address for Borrower set forth herein and written notice of said service mailed or delivered to Borrower in the manner provided herein shall be deemed in every respect effective service of process upon Borrower in any such suit, action or proceeding in the State of New York.

The Debt shall without notice become immediately due and payable at the option of Lender upon the happening of any Event of Default.

43.    The Mortgage provides, among other things:

**Section 7.01 Remedies.** Upon the occurrence and during the continuance of any Event of Default, [Borrower] agrees that [Lender] may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against [Borrower] and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as

[Lender] may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of [Lender]:

(a) declare the entire unpaid Debt to be immediately due and payable;

(b) institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Obligations not then due, unimpaired and without loss of priority;

**Section 7.03 [[Lender]'s] Right to Cure Defaults.** During the continuance of any Event of Default…[Lender] is authorized to enter upon the Property for such purposes or appear in, defend or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from [Lender] that such cost or expense was incurred to the date of payment to [Lender], shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to [Lender] upon demand.

**Section 12.01 Governing Law; Jurisdiction; Service of Process.** With respect to matters relating to the creation, perfection and procedures relating to the enforcement of this Mortgage, this Mortgage shall be governed by, and be construed in accordance with, the laws of the state in which the property is located, it being understood that, except as expressly set forth above in this paragraph and to the fullest extent permitted by the law of such state, the law of the State of New York without regard to conflicts of laws principles shall govern all matters relating to this Mortgage and the other Loan Documents and all of the indebtedness or obligations arising hereunder or thereunder. All provisions of the Loan Agreement incorporated herein by reference shall be governed by, and construed in accordance with, the laws of the

State of New York without regard to conflicts of laws principles, as set forth in the governing law provision of the Loan Agreement.

44.     The Loan Agreement provides, among other things:

**Section 2.2.2 Default Rate.** In the event that, and for so long as, any Event of Default shall have occurred and be continuing, the Outstanding Principal Balance and, to the extent not prohibited by applicable law, all other portions of the Debt, shall accrue interest at the Default Rate, calculated from the date such payment was due or such Default shall have occurred without regard to any grace or cure periods contained herein. Interest at the Default Rate shall be paid immediately upon demand, which demand may be made as frequently as Lender shall elect, to the extent not prohibited by applicable law.

**Section 2.3.1 Payments**. On the date hereof, Borrower shall pay interest on the unpaid Outstanding Principal Balance from the Closing Date through and including January 5, 2017 (the "Initial Interest Period"). On February 6, 2017 and each Monthly Payment Date thereafter during the Term, Borrower shall make a payment of interest only on the Outstanding Principal Balance accrued at the Interest Rate during the Interest Period immediately preceding such Monthly Payment Date (the "Monthly Interest Payment Amount"). Borrower shall also pay to Lender all amounts required in respect of Reserve Funds as set forth in Article 6 hereof.

**Section 6.1 Cash Management Arrangements.** Upon the first occurrence of a Trigger Period, Borrower shall establish a trust account (the "Clearing Account") at an Eligible Institution selected by Borrower and reasonably approved by Lender (the "Clearing Bank"), which Clearing Account shall be maintained by Borrower at all times after the first occurrence of a Trigger Period…Upon the commencement of the first Trigger Period and at all times thereafter, Borrower shall cause all Rents to be transmitted directly by non-residential Tenants of the Property into the Clearing Account maintained at the Clearing Bank as more fully described in the Clearing Account Agreement. Without in any way limiting the foregoing, if Borrower or Manager receive any Gross Revenue from the Property, then (i) such amounts shall be deemed to be collateral for the Obligations and shall be held in trust for the benefit, and as the property, of Lender, (ii) such amounts shall not be commingled with any other funds or property of Borrower or Manager, and (iii) Borrower or Manager shall deposit such amounts in the Clearing Account within two (2) Business Day of receipt…

**Section 6.11 Security Interest in Reserve Funds.** As security for payment of the Debt and the performance by Borrower of all other terms, conditions and provisions of the Loan Documents, Borrower hereby pledges and assigns to Lender, and grants to Lender a security interest in, all Borrower's right, title and interest in and to all Gross Revenue and in and to all payments to or monies held in the Clearing Account, the Deposit Account and Accounts created pursuant to this Agreement (collectively, the "Cash Management Accounts"). Borrower hereby grants to Lender a continuing security interest in, and agrees to hold in trust for the benefit of Lender, all Rents in its possession prior to the (i) payment of such Gross Revenue to Lender or (ii) deposit of such Gross Revenue into the Deposit Account. Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in any Cash Management Account, or permit any Lien to attach thereto, or any levy to be made thereon, or any UCC Financing Statements, except those naming Lender as the secured party, to be filed with respect thereto…

**Section 8.1 Events of Default.** Each of the following events shall constitute an event of default hereunder (an "Event of Default"):

(i) if (A) the Obligations are not paid in full on the Maturity Date, (B) any regularly scheduled monthly payment of interest, and, if applicable, principal due under the Note is not paid in full on the applicable Monthly Payment Date, (C) any prepayment of principal due under this Agreement or the Note is not paid when due, (D) the Prepayment Fee is not paid when due, (E) the Liquidated Damages Amount is not paid when due, or (F) any deposit to the Reserve Funds is not made on the required deposit date therefor;

(ii) if any other amount payable pursuant to this Agreement, the Note or any other Loan Document (other than as set forth in the foregoing clause (i)) is not paid in full when due and payable in accordance with the provisions of the applicable Loan Document, with such failure continuing for ten (10) Business Days after Lender delivers written notice thereof to Borrower;

**Section 8.2.1    Acceleration.** Upon the occurrence of an Event of Default…and at any time thereafter, Lender may, in addition to any other rights or remedies available to it pursuant to this Agreement and the other Loan Documents or at law or in equity, take such action, without notice or demand (and Borrower hereby expressly waives any such notice or demand), that Lender deems advisable to protect and enforce its rights

against Borrower and in and to the Property, including declaring the Obligations to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower and the Property, including all rights or remedies available at law or in equity…

**Section 10.4 Governing Law.**  (a) This Agreement…and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and performed in such state (without regard to principles of conflict of laws) and any applicable law of the United States of America…To the fullest extent permitted by law, borrower hereby unconditionally and irrevocably waives any claim to assert that the law of any other jurisdiction governs this Agreement and the Note, and this Agreement and the Note shall be governed by and construed in accordance with the laws of the State of New York pursuant to section 5-1401 of the New York General Obligations law.

Any legal suit, action or proceeding against Lender or Borrower arising out of or relating to this Agreement may at Lender's option be instituted in any federal or state court in the City of New York, County of New York, pursuant to section 5-1402 of the New York General Obligations law, and Borrower waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Borrower hereby irrevocably submits to the exclusive jurisdiction of any such court in any suit, action or proceeding. Borrower agrees that service of process upon Borrower at the address for Borrower set forth herein and written notice of said service mailed or delivered to Borrower in the manner provided herein shall be deemed in every respect effective service of process upon Borrower in any such suit, action or proceeding in the State of New York…

### Borrower Has Defaulted Under The Loan Documents

45.    Borrower has defaulted under the Loan Documents.

46.    Beginning as early as October 1, 2020, Borrower was required to cause all rents to be transmitted directly by non-residential tenants of the Property into a "Clearing Account" at an

eligible financial institution reasonably approved by Lender.  Borrower failed to do so (such failures, the "Cash Management Defaults").

47.    In addition, Borrower failed to make required monthly payments due under the Note starting on April 6, 2023 and every monthly payment due thereafter. Those failures also constituted Events of Default under the Loan Documents (the "Payment Defaults").

48.    Upon information and belief, on or about August 15, 2022, the interest rate in effect under the Loan Documents increased to the Default Rate as a result of Borrower's defaults.

49.    By letter dated June 26, 2023 ("Default Notice"), Borrower was notified that the Cash Management Defaults and Payment Defaults constituted Events of Default under the Loan Documents. A copy of the Default Notice is annexed as **Exhibit 14**. The Events of Default remain uncured.

## FIRST CAUSE OF ACTION
(Foreclosure of Mortgage)

50.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

51.    The Loan Documents constitute valid and binding agreements of the parties thereto.

52.    Borrower breached the terms of the Loan Documents, as evidenced by the Rent Defaults and Payment Defaults.

53.    For the reasons alleged above, the Rent Defaults constitute Events of Default under the Loan Documents.

54.    For the reasons alleged above, the Payment Defaults constitute an Event of Default under the Loan Documents.

55.     Events of Default have occurred under the Loan Documents and are continuing.

56.     Based upon the occurrence of the Events of Default, Plaintiff is entitled to exercise any and all of its rights and remedies, whether under the Loan Documents, at law, or in equity, including, but not limited to, those rights and remedies pursuant to Section 8.2 of the Loan Agreement.

57.     There is now due and owing to Plaintiff under the Loan Documents the entire unpaid principal balance of the Loan, in the amount of $31,500,000, plus (a) accrued and unpaid interest, including, but not limited to, interest at the Default Rate, which Default Rate interest has been accruing since the first Event of Default, (b) all other sums due to Plaintiff in respect of the Loan under the Note or other Loan Documents, and (c) all costs of collection and defense, including, but not limited to attorneys' fees and special servicing fees, all as more fully provided for in the Loan Documents, which sums are due and owing, in addition to any usual costs and allowances that Plaintiff may be entitled to and may be awarded under any law or statute applicable to this action.

58.     In order to protect its security in the Premises and/or under the Loan Documents, Plaintiff may be compelled to pay during the pendency of this action additional taxes, water and sewage charges, assessments, insurance premiums, and other charges necessary or advisable to maintain or increase the value of, or otherwise affecting, the Property, and Plaintiff requests that any sums so advanced, and any other sums of like nature so paid during the pendency of this action, be added to the amount otherwise due to Plaintiff and be deemed secured by the Mortgage and adjudged a valid lien on the Property pursuant to the terms of the Loan Documents.

59.     Upon information and belief, the interests, liens, or claims of the Defendants herein are all subordinate and subject to the Mortgage held by Plaintiff and being foreclosed herein.

60.     In the event that Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior or senior mortgage, or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s), and/or seek determination of priority thereof, in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

61.     Plaintiff shall not be deemed to have waived, altered, or released any defaults or Events of Default mentioned herein, nor shall Plaintiff be deemed to have changed the election hereinbefore made by reason of any payment received or accepted after the commencement of this action, and such election shall continue and remain effective.

62.     Upon information and belief, none of the Defendants are infants, absentees, or incompetents, nor have they been proceeded against as such.

63.     No other action or proceeding has been commenced or maintained, or is now pending at law or otherwise, for the foreclosure of the Mortgage or for recovery of said sum secured by the Note and Mortgage, or other Loan Documents, or any part thereof.

64.     By virtue of the foregoing, Plaintiff is entitled to a judgment of foreclosure under the Mortgage.

## SECOND CAUSE OF ACTION
(Entitlement to Rents)

65.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs of this Complaint as if fully set forth herein.

66.     Section 1.02 of the Mortgage provides, in relevant part: "[Borrower] hereby absolutely and unconditionally assigns to [Lender] all of [Borrower]'s right, title and interest in and to all current and future Leases and Rents; it being intended by [Borrower] that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Assignment of Leases, the Cash Management Agreement, and Section 7.01(i) of this Mortgage, [Lender] grants to [Borrower] a revocable license to collect, receive, use and enjoy the Rents. [Borrower] shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums." *See* Ex. 1.

67.     Section 7.01 of the Mortgage provides, in relevant part: "Upon the occurrence and during the continuance of any Event of Default, [Borrower] agrees that [Lender] may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against [Borrower] in and to the Property, including, but not limited to…(i) the license granted to [Borrower] under Section 1.02 hereof shall automatically be revoked and [Lender] may enter into or upon the Property…and take possession of all books, records and accounts relating thereto…and thereupon Lender may…(v) require [Borrower] to pay monthly in advance to [Lender], or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupantion of such part of the Property as may be occupied by [Borrower]…(vii) apply the receipts from the Property to the payment and performance of the Obligations (including, without limitation, the payment of the Debt), in such order, priority and proportions as [Lender] shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and

other expenses in connection with the Property, as well as just and reasonable compensation for the services of [Lender], its counsel, agents and employees…" *See* Ex. 1.

68.     As alleged above, Events of Default have occurred and continue to occur under the Loan Documents.

69.     Based upon the Events of Default, and pursuant to Section 7.01(i) of the Mortgage, the license granted by Plaintiff to Borrower pursuant to Section 1.02 of the Mortgage to collect Rents is, and has been, automatically revoked and Plaintiff is immediately entitled to exercise any and all of its rights and remedies under the Loan Documents, including, but not limited to, receiving and applying receipts from the Property to the payment of the Debt, in such order, priority and portions as Plaintiff deems appropriate in its sole discretion, as provided for pursuant to the terms of 7.01(i) of the Mortgage.

70.     Similarly, Section 1.1 of the Assignment of Leases and Rents provides, in relevant part: "Borrower hereby absolutely and unconditionally assigns and grants to Lender the following property, rights, interests and estates, now owned or hereafter acquired by Borrower…(b) Rents.  All Rents, which term shall include Rents paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code." *See* Ex. 4.

71.     Section 2.1 of the Assignment of Leases and Rents further provides, in relevant part: "this Assignment constitute[s] a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1…Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents, as well as any sums due under the Lease Guaranties. Borrower shall hold the Rents, as well as all sums received pursuant to any Lease

19

Guaranty, or a portion thereof sufficient to discharge all current sums due on the Obligations, in trust for the benefit of Lender for use in the payment of such sums." *Id.*

72.     Section 3.1 of the Assignment of Leases and Rents provides, in relevant part: "Upon or at any time after the occurrence of an Event of Default, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked and Lender shall immediately be entitled to possession of all Rents and all sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property…" *Id.*

73.     As alleged above, Events of Default have occurred and continue to occur under the Loan Documents.

74.     Based upon the Events of Default, and pursuant to Section 3.1 of the Assignment of Rents, the license granted by Plaintiff to Borrower pursuant to the terms thereof is, and has been, automatically revoked and Plaintiff is entitled to exercise any of its rights and remedies under the Assignment of Leases and Rents, including, but not limited to, immediately taking possession of all Rents and sums due under any Lease Guaranties.

75.     Accordingly, and for the reasons alleged above, based upon the Events of Default, Plaintiff is entitled to exercise any and all of its rights and remedies under the Mortgage and Assignment of Leases and Rents, including, but not limited to, collecting all Rents associated with the Property.

### THIRD CAUSE OF ACTION
(Foreclosure of Security Interest in Personal Property)

76.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs of this Complaint as if fully set forth herein.

77.     The Loan Documents constitute valid and binding agreements of the parties thereto.

78.     Borrower breached the terms of the Loan Documents, as evidenced by the Rent Defaults and Payment Defaults.

79.     Each of the foregoing defaults constitutes an Event of Default under the Loan Documents.

80.     As set forth above, Plaintiff maintains security interests in all Borrower's Personal Property, as perfected by the County UCC and State UCC, which were assigned to Plaintiff and remain current.

81.     Therefore, Plaintiff is entitled to foreclose on its security interests in all of Borrower's Personal Property.

## FOURTH CAUSE OF ACTION
(Appointment of a Receiver)

82.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs of this Complaint as if fully set forth herein.

83.     Upon information and belief, the Property and related Personal Property are Borrower's sole assets.

84.     Upon further information and belief, the Property is an office building.

85.     Upon further information and belief, there is no business operating from the Property.

86.     Plaintiff fears that the Property is in danger of waste and disposal.

87.     Because of the foregoing, Plaintiff is threatened with material losses and injuries for which it has no adequate remedy at law if Borrower remains in control of the Property.

88.     Plaintiff has a lien on the Property, which includes, without limitation, all real and personal property located at or associated with the Property.

89.     Under the Loan Documents, if there is an Event of a Default, Plaintiff has the right to exercise various rights and remedies, which includes, without limitation, the right to seek the appointment of a receiver.

90.     Specifically, Section 7.01 of the Mortgage provides, in relevant part: "Upon the occurrence and during the continuance of any Event of Default, [Borrower] agrees that [Lender] may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against [Borrower] in and to the Property, including, but not limited to…(h) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Mortgagor, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof…" *See* Ex. 1.

91.     As alleged above, Events of Default have occurred and are continuing.

92.     Pursuant to Section 7.01(i) of the Mortgage and 3.1 of the Assignment of Leases and Rents, Borrower's license to collect the Rents from the Property is, and has been, revoked because of the Events of Default.

93.     Pursuant to the Loan Documents, and in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff is entitled to the appointment of a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Declaring that Events of Default exist under the Loan Documents arising out of Borrower's breach of its contractual obligations to Plaintiff;

B.     Ordering that Defendants and all persons or entities claiming by, through, or under them, and that every person whose right, title, conveyance, or encumbrance is recorded subsequent to the filing of the Notice of Pendency of this action, be barred and foreclosed of all right, title, interest, claim, lien, and equity of redemption in and to the Premises and each and every part and parcel thereof;

C.   Directing that the Property be sold according to law, subject to:

    i.   Any state of facts that an inspection of the Property would disclose;

    ii.   Any state of facts that an accurate survey of the Property would show;

    iii.   Covenants, restrictions, easements, and public utility agreements of record that have not been cancelled or otherwise survive foreclosure, if any;

    iv.   Building and zoning ordinances of the municipality in which the Property is located and possible violations of the same;

    v.   Any rights of tenants or persons or entities in possession of the Property; any equity of redemption of the United States of America to redeem the Property within 120 days from the date of sale; and

    vi.   Prior mortgage lien(s) of record, if any, and any advances and arrears thereunder; and prior lien(s) of record, if any;

D.   Directing that (a) the monies arising from the sale be brought into Court, (b) the sale be consummated for whatever amount or amounts shall result in the highest aggregate purchase price, and (c) Defendants shall surrender possession to the purchaser or purchasers of all items of property sold at the foreclosure sale;

E.   Directing that Plaintiff may be paid the amount due on the Loan with interest, late charges, and all other applicable costs and charges to the time of such payment and the expenses of such sale, plus reasonable attorneys' fees, together with the costs, allowances, and disbursements of this action, and together with any sums incurred by Plaintiff pursuant to any term or provision of the Loan Documents or paid by Plaintiff to protect the Mortgage lien, together with interest upon said sums from the dates of the respective payments and advances thereof;

F.   Directing that the purchaser or purchasers at said sale be let into possession on production or delivery of referee's or receiver's deed or deeds;

G.   Ordering that advertisement of the notice of sale be made pursuant to New York Real Property Actions and Proceedings Law § 231;

H.   Permitting Plaintiff to foreclose its security interest in all the Borrower's Personal Property and fixtures;

I.   Directing any lessee or other person agreeing to make use or occupancy payments to Borrower to make payments directly to Plaintiff and permitting Plaintiff to apply such amounts in accordance with the Loan Documents;

J.      Declaring that Borrower has waived any objection to the appointment of a receiver;

K.      Appointing a receiver over the Property, pursuant to Rule 66 of the Federal Rules of Civil Procedure, for the purposes of preserving and protecting the value of the Property and to take immediate possession of the Property and all books, records, accounts, revenues, and other items incidental thereto, and to collect the Rents, issues, benefits, and profits of the Property during the pendency of this action or to perform such other acts as the Court orders and deems appropriate;

L.      Ordering Borrower to promptly render an accounting for all cash collateral and any other funds derived from the ownership or operation of the Property received by Borrower, and in all respects to cooperate with the receiver to provide Plaintiff and the receiver with all information and instrumentalities necessary for the receiver to perform its obligations as receiver;

M.      Ordering that the receiver be authorized to collect all Rents and profits of the Property and be granted all the necessary and customary powers of a receiver, including, without limitation, the power to employ third-party property managers, leasing and sale brokers, environmental consultants, counsel, and other necessary third parties, and to bring, defend, and/or intervene in actions as may be necessary to discharge his duties as receiver, without further order of this Court;

N.      Ordering the receiver to pay to Plaintiff on a monthly basis any revenue derived from the ownership or operation of the Property more than the amount reasonably required to manage, operate, lease, maintain, and preserve the Property;

O.      Ordering that Plaintiff be permitted and authorized, at its sole election, to make such advances to the receiver, as may be necessary from time to time, in the exercise of Plaintiff's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain, and preserve the Property to the extent that the gross revenue derived from the ownership or operation of the Property is insufficient to pay such costs and expenses, without Plaintiff becoming a mortgagee-in-possession or incurring any other liability to Defendants or third parties;

P.      That Defendants obligated under the Note and Guaranty be adjudged to pay any deficiency that may remain after applying all of such monies as aforesaid in accordance with the law, including RPAPL 1371, and provide that Plaintiff has execution therefore;

Q.      Ordering that any advances made by Plaintiff shall be additional obligations owed by Borrower to the Plaintiff, to be added to the Borrower's outstanding indebtedness under the Loan and secured by Plaintiff's first-priority lien on and perfected security interest in the Property; and

R.      Granting such other and further relief to Plaintiff as the Court deems just and proper.

Dated: New York, New York
          September 12, 2023                    REED SMITH LLP

                                          By: **/s/  Victoria R. Serigano**
                                                Louis A. Curcio
                                                Victoria R. Serigano
                                                599 Lexington Avenue
                                                New York, New York 10022
                                                lcurcio@reedsmith.com
                                                vserigano@reedsmith.com
                                                *Attorneys for Plaintiff*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Matthew Furay, declare and verify under penalty of perjury as follows:

1. I am a Servicing Officer for K-Star Asset Management LLC, special servicer for the Plaintiff.

2. I have read the Verified Complaint, and, upon information and belief, the allegations therein are true and correct.

3. The grounds for my belief as to all matters are my review of correspondence and other writings relevant to this action that were available to me.

Executed on September 12, 2023

_____
Matthew Furay